UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SCOTT STRAND,

                    Plaintiff,

          v.                                    Case No. 22-C-1529

MARTIN O'MALLEY,
Commissioner of Social Security,

                    Defendant.

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Scott Strand filed this action for judicial review of a decision by the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff asserts that the decision of the administrative law judge (ALJ) is flawed and requires remand. For the reasons that follow, the court concludes that the Commissioner's decision should be affirmed.

## BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on September 3, 2020, when he was 58 years old. R. 229. He alleged disability beginning October 30, 2019. R. 256. Plaintiff asserted an inability to work due to PTSD, TBI, severe depression and anxiety, asthma, COPD, right knee issues, back and neck injury, stroke, ADHD, and OCD. R. 244. After his application was denied initially and on reconsideration, Plaintiff requested a hearing before an ALJ. ALJ Wayne Ritter conducted a hearing on March 29, 2022. Plaintiff, who was represented by counsel, a vocational expert (VE), and a Veteran's Affairs (VA) advocate testified. R. 37–82.

At the hearing, Plaintiff indicated that he has attended therapy once a week for the last four years and previously saw a mental health therapist once a month for six years.  R. 43, 45.  He summarized the medications he took for his mental conditions, including Adderall for ADHD, Alprazolam for anxiety, Bupropion for depression, and Fluvoxamine for OCD.  R. 44.  Plaintiff stated that he had surgery on his right shoulder in August 2021 and that he attends physical therapy once a week, receives acupuncture, and attends massage therapy.  R. 45–46.  He indicated that he takes muscle relaxers, receives acupuncture, and attends physical therapy for his back.  R. 47.  Plaintiff received injections in his right knee, but the treatment "didn't do anything at all."  R. 48–49.  He was prescribed Symbicort and an albuterol inhaler for his COPD.  R. 49.  Plaintiff testified that he does not drink but smokes one to three cigarettes a day.  R. 51.

Plaintiff submitted written sworn testimony after the hearing.  R. 351–52.  He stated that he is unable to work on a full-time basis due to severe anxiety, depression, PTSD, and OCD.  He reported that he has difficulty remembering and concentrating.  Plaintiff indicated that, approximately five to six times a month, he cannot leave his house and occasionally will stay in bed.  He stated that he gets migraine headaches approximately one to four times a week, and they last between eight and 24 hours.  Plaintiff reported that he could stand for 10 to 15 minutes, walk five minutes or less at one time, and stand and walk less than two hours over the course of eight hours.  He stated that he can lift five to ten pounds with his right arm due to his shoulder pain and that he has nerve damage in three to five digits on his left hand.  Plaintiff indicated that he is severely limited in many functions due to his Parkinson's disease, as his hands and legs shake.  He stated that he has significant neck pain and suffers from a loss of range of motion on the right side.  He indicated that he also suffers from the aftereffects of a spinal stroke as well as left knee pain, which causes significant problems walking up and down stairs.  R. 351.

2

In an eighteen-page decision dated May 9, 2022, the ALJ concluded Plaintiff was not disabled. R. 13–30. Following the Agency's sequential evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity from October 30, 2019, his alleged onset date, to March 31, 2022, his date last insured. R. 15. Next, the ALJ determined that Plaintiff had the following severe impairments: disorders of the back and neck, right shoulder degenerative joint disease, major depressive disorder, anxiety disorder, obsessive-compulsive disorder (OCD), post-traumatic stress disorder (PTSD), and attention deficit hyperactivity disorder (ADHD). *Id.* The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 17.

After reviewing the record, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 404.1567(c) except "he can only frequently crouch, kneel, and crawl; he can occasionally reach overhead with the bilateral upper extremities; he must avoid concentrated exposure to fumes, odors, dust, and gases; he can tolerate occasional changes in work setting; and he can have occasional interaction [with] supervisors, co-workers, and the public." R. 20. The ALJ found that Plaintiff was capable of performing past relevant work as a meat clerk and, alternatively, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can also perform, including hand packager, laundry worker, and hospital cleaner. R. 27–29. Based on these findings, the ALJ concluded that Plaintiff was not under a disability at any time from October 30, 2019, through March 31, 2022. R. 30. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner.

3

## LEGAL STANDARD

The Commissioner's final decision will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). The ALJ "must build an accurate and logical bridge from the evidence to his conclusion[s]." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citing *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)).

The ALJ is also expected to follow the Social Security Administration's rulings and regulations. Failure to do so, unless the error is harmless, requires reversal. *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

### A. Evaluation of Medical Opinion Evidence

Plaintiff asserts that the ALJ erred in evaluating the medical opinions of Gerald Bannasch, M.D.; state agency medical consultants Mina Khorshidi, M.D., and William Fowler, M.D.; and state agency psychological consultants Susan Donahoo, Psy.D., and John Warren, Ed.D. Under the current regulations, an ALJ is not required to give any specific evidentiary weight to any medical opinion. 20 C.F.R. § 404.1520c(a). Instead, the ALJ must focus on the persuasiveness of the medical opinions by considering supportability, consistency, the relationship with the claimant, specialization, and other factors. § 404.1520c(c). The regulation explains that supportability and consistency are the "most important factors" to consider. § 404.1520c(b)(2).

Plaintiff argues that the ALJ failed to provide an adequate rationale for finding the opinions of Dr. Bannasch unpersuasive. Dr. Bannasch completed a mental impairment questionnaire in February 2022. He opined that Plaintiff was totally disabled and checked boxes indicating that Plaintiff had marked limitation in his ability to understand, remember, or apply information; to interact with others; to concentrate, persist, or maintain pace; and to adapt or manage oneself. R. 5958. Dr. Bannasch also noted that Plaintiff had extreme limitations in all aspects of mental abilities and aptitudes needed to do unskilled work, except for mild limitations in the ability to be aware of normal hazards and take appropriate cautions. R. 5956. He further indicated that Plaintiff had marked limitations in the ability to interact appropriately with the general public and to maintain socially appropriate behavior, would be absent from work for more than four days a month, and had marginal adjustment. R. 5957–59.

As an initial matter, Plaintiff asserts that the ALJ failed to properly consider the regulatory factors in determining whether Dr. Bannasch's opinion was persuasive. Under the current

framework, however, the most important factors to consider in weighing a medical source's opinion are supportability and consistency. In this case, the ALJ recognized that Dr. Bannasch has an established treating relationship with Plaintiff and is a specialist in the field of mental health. R. 26. He nevertheless concluded that the degree of limitations opined by Dr. Bannasch are not substantially supported by his mental status evaluations and the record as a whole. *Id.*

The ALJ explained that Dr. Bannasch more recently noted perseverative thought processes and some distractibility during more recent evaluations, but Plaintiff overall was found to present as cooperative and pleasant, with intact memory, intact attention/concentration, normal speech and language abilities, "excellent" fund of knowledge, and intact insight and judgment. *Id.* He found that Plaintiff demonstrated good mental stability throughout the period at issue, even when experiencing increased symptoms, which was not consistent with an individual with such extreme degree of limitation as opined by Dr. Bannasch. In addition, the ALJ observed that Plaintiff's treatment regimen remained unchanged for the most part, with reported good efficacy and no reported side effects. He noted that Dr. Bannasch did not refer Plaintiff to a higher level of care and that Plaintiff continued to be able to live independently, which included regular attendance to visits with Dr. Bannasch and other medical care needs as well as capacities to manage and administer his own medications, advocate for non-VA care, and manage his own money. The ALJ concluded that such activities are inconsistent with the essential total lack of cognitive functioning opined by Dr. Bannasch. Finally, the ALJ noted that Dr. Bannasch's opined degree of limitations across all areas of mental functioning and limitations for work absences are inconsistent with Plaintiff's most recent past relevant work as a meat cutter, where he was terminated for violation of a company policy, not due to an inability to perform the job. *Id.*

Plaintiff asserts that the ALJ failed to consider the narrative portions of Dr. Bannasch's opinions. Although an ALJ may not ignore "an entire line of evidence" that is contrary to his decision, he is also not required to address every piece of evidence in the file. *See Terry*, 580 F.3d at 477; *see also* 20 C.F.R. § 404.1520c(b)(1) ("[W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as applicable."); *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995) (noting that an ALJ "need not provide a complete written evaluation of every piece of testimony and evidence" (citation omitted)). The narrative portions of Dr. Bannasch's opinions did not constitute an entire line of evidence that the ALJ ignored or was inconsistent with his assessment. Therefore, the ALJ did not err in not explicitly addressing it.

Plaintiff also asserts that, in concluding that Plaintiff did not meet the "paragraph C" criteria, the ALJ improperly ignored Dr. Bannasch's opinion that Plaintiff met the "paragraph C" criteria for Listing-level impairments. The ALJ recognized that Dr. Bannasch opined that Plaintiff had marked limitation in all four areas of the "paragraph B" criteria and had the marginal adjustment characterizing the "paragraph C" criteria but concluded that Dr. Bannasch's opinions were not persuasive. He explained that Plaintiff did not meet the listing requirements of either the "paragraph B" or "paragraph C" criteria. *See* R. 18–20. Plaintiff contends that the ALJ erred in concluding that Plaintiff's level of care was not sufficient to establish disability because Dr. Bannasch did not refer him to a higher level of care. But it is not unreasonable to conclude that, if Plaintiff had the extreme functional restrictions Dr. Bannasch described, Dr. Bannasch would have taken steps to prescribe treatment to alleviate those debilitating symptoms. *See Simila v.*

*Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (ALJ is entitled to rely on claimant's relatively conservative treatment history).

Citing *Stage v. Colvin*, 812 F.3d 1121 (7th Cir. 2016), Plaintiff asserts that the ALJ was not qualified or authorized to determine the limitations caused by his impairments based on the ALJ's own review of the medical evidence. But *Stage* concerned an ALJ's improper interpretation of MRIs and the need for a hip replacement without the assistance of a medical expert. *Id.* at 1125. Plaintiff does not cite to any imaging studies or other medical data the ALJ impermissibly interpreted. Instead, he asserts that the ALJ improperly "substituted his own lay intuition for the expert opinion of Dr. Bannasch." Pl.'s Br. at 14, Dkt. No. 12. When a case proceeds to an administrative hearing, the ALJ "is responsible for assessing [the claimant's] residual functional capacity." 20 C.F.R. § 404.1546(c). In this case, the ALJ fulfilled his role by reviewing not just the medical opinions but all the evidence and making appropriate inferences from the record to formulate Plaintiff's RFC. Although Plaintiff may disagree with the ALJ's conclusions, it is not the court's role to reweigh the evidence or substitute its judgment for that of the ALJ. *See Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) ("We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination." (internal quotation marks and citation omitted)). The ALJ adequately explained why he found Dr. Bannasch's opinion unpersuasive, consistent with 20 C.F.R. § 404.1520c.

Next, Plaintiff argues that the ALJ failed to explain his departure from the opinions of the state agency consultants, which he found to be "generally persuasive." State agency psychological consultant Susan Donahoo, Psy.D., completed a Mental Residual Functional Capacity Assessment (MRFCA) form in February 2021. She opined that Plaintiff had some moderate limitations in the areas of social interaction and adaptation. R. 140. Specifically, she indicated that Plaintiff was

moderately limited in the ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors. R. 143. Dr. Donahoo explained that Plaintiff's "ability to interact with co-workers, supervisors, and the public would be reduced, but adequate to handle brief, infrequent, and superficial contact." *Id.* She also found that Plaintiff was moderately limited in the ability to respond appropriately to changes in the work setting and explained that "[e]vidence supports claimant would be capable of performing routine work tasks which do not change frequently. No fast paced tasks with strict production quotas. Variable paced tasks with end of day production quotas would be acceptable." *Id.*

At the reconsideration level, John Warren, Ed.D., completed an MRFCA in October 2021. He opined that Plaintiff was moderately limited in the areas of social interaction and adaptation. R. 150. Dr. Warren indicated that Plaintiff was limited in the ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors. R. 154. He explained that Plaintiff is "able to sustain the basic demands associated with relating adequately with supervisors and co-workers, with limited contact with the general public." *Id.* Dr. Warren also found that Plaintiff was moderately limited in the ability to respond appropriately to changes in the work setting. He stated that Plaintiff is "able to adapt to routine workplace change, remain aware of environmental hazards, form basic plans/goals, [and] travel independently." *Id.*

The ALJ summarized the state agency psychologists' findings and concluded that they were generally persuasive. R. 25. He explained that the opinions are consistent with and supported by the overall medical and other evidence in the record, which shows that Plaintiff suffers from several mental impairments that interfere with his abilities for focus and concentration and to interact with others. The ALJ observed, however, that Plaintiff maintained overall stability

9

throughout the relevant period despite his stressors. He noted that mental status examinations reflect reports of anxious mood and affect but no specific deficits in attention, concentration, memory, cognition, insight, or judgment. R. 25–26. The ALJ stated that Plaintiff tended to perseverate and lose his train of thought during a period of heightened symptoms associated with familial stressors in 2021; however, he continued to benefit from treatment and maintained stability, as shown by his largely unchanged medication regimen and lack of need for a higher level of care, and ability to live independently and continue to attend to all other activities of daily living. R. 26. The ALJ found that Plaintiff had no apparent mental health difficulties (including problems interacting with other people) in performing his most recent past relevant work as a meat clerk, has been able to engage in a long-term relationship, interacts with memory care personnel, and has an attorney he hired to look into his father's estate. He concluded that this evidence supports a capacity to interact with supervisors, co-workers, and the public on an occasional basis and to work in jobs that do not involve more than occasional changes in work setting. The ALJ also specifically indicated that he did not adopt specific limitations for non-fast paced or variable-paced tasks with end-of-day production quotas given Plaintiff was able to perform unskilled work as a meat clerk, a job from which he was terminated for violation of a company policy rather than either a physical or mental limitation. *Id.*

Plaintiff argues that, by rejecting the opinions that Plaintiff should be limited to no fast-paced work and to variable-paced tasks, the ALJ substituted his lay opinion for the medical experts'. It should be noted, however, that while Dr. Donahoo recommended such a limitation, Dr. Warren did not. R. 154. In any event, although the ALJ must consider medical source opinions in assessing a claimant's RFC, there is no requirement that the ALJ's RFC assessment track verbatim the medical opinions he considers. *See Schmidt v. Astrue*, 496 F.3d 83, 845 (7th Cir.

2007) ("[A]n ALJ must consider the entire record[;] the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." (citation omitted)). Again, "the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2). Plaintiff also asserts that, even though the ALJ found the state agency psychologists' opinions equally persuasive, he failed to resolve conflicts between their opinions. The ALJ only found the opinions "generally persuasive" and explained why he found Plaintiff had different functional limitations than those identified by the state agency psychologists and how the evidence supported the RFC he ultimately assessed. The ALJ provided an accurate and logical bridge from the evidence to his conclusions.

Finally, Plaintiff asserts that the ALJ erred in finding the opinions of state agency medical consultants Mina Khorshidi, M.D., and William Fowler, M.D., persuasive. The state agency medical consultants found that Plaintiff could perform work at the medium exertional level with limitations for occasional overhead reaching with the bilateral upper extremities; frequent kneeling, crouching, and crawling; and the avoidance of concentrated exposure to fumes, odors, dusts, and gases.

Plaintiff argues that the ALJ failed to consider favorable evidence regarding Plaintiff's Parkinson's disease that arose after the opinions were rendered. It is error for an ALJ to "rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) (citing *Stage*, 812 F.3d at 1125 (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit new MRI to medical scrutiny)); *see also Akin v. Berryhill*, 887 F.3d 314, 317 (7th Cir. 2018) (holding ALJ

erred in crediting the state-agency opinions, which were outdated and missing approximately 70 pages of medical records, including MRI results). The mere fact that a claimant undergoes further treatment after an evaluation does not render an evaluation worthless, however.

In this case, the ALJ acknowledged that the state agency medical consultants did not have the opportunity to review the complete record presented at the hearing level but noted that they reviewed the evidence of record using their professional expertise and specialized knowledge in assessing physical impairments and resulting limitations within the social security disability analysis. R. 25. The ALJ noted that medical treatment records reflect that Plaintiff is undergoing workup for Parkinson's disease, with brain imaging findings "suspicious" for early changes of the disease. R. 17. He observed, however, that Plaintiff exhibited generally normal neurological functioning on physical examinations, with some hyperreflexia possibly attributed to use of narcotic pain medication. The ALJ thus concluded that Parkinson's disease is not shown to cause more than minimal limitations on Plaintiff's ability to perform basic work functions prior to his date last insured. *Id.*

The ALJ also explained that the state agency medical consultants' opinions were generally consistent with and supported by the evidence showing that Plaintiff has degenerative processes of the cervical and lumbar spine. R. 25. He indicated that imaging studies showed at most mild findings of the lumbar spine and overall stable changes at the cervical levels. The ALJ noted that right knee imaging was unconcerning. He stated that Plaintiff indicates that massage therapy, acupuncture treatment, and a muscle relaxer provide good relief of his symptoms and that he achieved a good result from shoulder surgery, reporting that he was able to reach overhead and behind his back. The ALJ indicated that Plaintiff would require an additional limitation 12 months after surgery. He noted that Plaintiff's COPD/asthma appeared to be under good control with

12

medication, as Plaintiff generally denied respiratory symptoms, demonstrated no abnormalities on examinations, and did not experience frequent exacerbations. *Id.* The ALJ explained why, despite the fact that the state agency medical consultants' opinions were offered prior to the hearing and the additional treatment Plaintiff received, they were persuasive. In short, the ALJ did not err in relying on the state agency medical consultants' opinions.

## B. Credibility

Plaintiff also challenges the ALJ's evaluation of his symptoms. The social security regulations set forth a two-step procedure for evaluating a claimant's statements about the symptoms allegedly caused by his impairments. *See* 20 C.F.R. § 404.1529. First, the ALJ determines whether a medically determinable impairment "could reasonably be expected to produce the pain or other symptoms alleged." § 404.1529(a). If so, the ALJ then "evaluate[s] the intensity and persistence" of a claimant's symptoms and determines how they limit the claimant's "capacity for work." § 404.1529(c)(1). In doing so, the ALJ considers all the available evidence as well as the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of his pain or other symptoms; (3) the precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) other treatment; and (6) any other factors concerning functional limitations and restrictions due to pain or other symptoms. *See* § 404.1529(c)(3); *see also* SSR 16-3p. "ALJ credibility determinations are given deference because ALJs are in a special position to hear, see, and assess witnesses." *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014) (citation omitted). On judicial review, the court must "merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213–14 (7th Cir. 2003)). The court is not to "reweigh evidence, resolve

13

conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong . . . and deserving of reversal." *Elder*, 529 F.3d at 413–14 (internal quotation marks and citations omitted); *see also Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but not to the degree alleged. He concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record. Plaintiff asserts that the ALJ improperly relied on his own lay interpretation of the medical record in concluding that Plaintiff's subjective complaints were not fully supported by the objective medical evidence. Indeed, an ALJ may not reject a claimant's statements about the intensity and persistence of his pain or other symptoms or about the effect his symptoms have on his ability to work "solely because the available objective evidence does not substantiate [his] statements." 20 C.F.R. § 404.1529(c)(2). That does not mean, however, that the ALJ cannot consider the medical evidence in assessing a claimant's credibility. After all, objective medical evidence is a "useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities for an adult." SSR 16-3p.

The ALJ's discussion of the medical evidence in relation to Plaintiff's alleged symptoms complied with the social security regulations and rulings on assessing claimant credibility. *See* R. 22–24. With respect to his physical impairments, the ALJ noted that, despite imaging studies showing Plaintiff has lumbar and cervical degenerative disc disease and changes of the AC joint

of his right shoulder, Plaintiff demonstrated full motor strength of the upper and lower extremities, good range of motion of the cervical spine and upper and lower extremities, intact sensory functioning (slightly decreased to cold and vibratory for the lower extremities), no muscle atrophy, normal muscle tone without spasticity, normal reflexes of the upper (slightly increased in the lower) extremities, normal coordination, and a non-spastic, intact gait and station. R. 22. He noted that physical examination findings continued to show good musculoskeletal and neurological functioning. As to Plaintiff's right shoulder, the ALJ noted that, while Plaintiff stated he required surgery, the treatment records indicated that any surgery would be elective. Plaintiff asserts that, by rejecting Plaintiff's statements, the ALJ fundamentally misunderstood what constitutes elective and emergency surgery. But the ALJ simply contrasted Plaintiff's report that he required surgery with the treatment note stating it was elective, not recommended. The ALJ also noted that Plaintiff was able to reach overhead and behind his back, stating he was happy with his progress. As of January 2022, Plaintiff displayed normal range of motion in all planes and only slightly decreased strength. Plaintiff reported he was doing well overall, "with improved pain and just some clicking to the back side of his shoulder." *Id.*

With respect to Plaintiff's mental impairments, the ALJ indicated that the medical and other evidence demonstrated Plaintiff has a history of depression, anxiety, OCD, PTSD, and ADHD for which he is treated on a regular and ongoing basis. R. 24. The ALJ noted that while Plaintiff experienced heightened symptoms associated with the loss of his father, his mother's health problems, and estate issues in 2021, the record overall reflects that he continues to demonstrate reasonably good mental stability and functioning despite his symptoms. Plaintiff reported good benefit to medications, which are generally effective in controlling his symptoms when taken as prescribed. The ALJ also noted that Plaintiff has not required significant changes

in his medication or level of care that would suggest a decline in functioning or incapacity to manage his psychological symptoms. R. 24–25.

Plaintiff argues that the ALJ erred in relying on Plaintiff's perceived improvement with treatment. He contends that improvement alone is not relevant and that "the relevant question is whether any improvement restored an ability to sustain full-time competitive employment." Pl.'s Br. at 13. Yet, the RFC reflects the most a person can do; therefore, it is appropriate to consider improvement in assessing Plaintiff's functioning and the intensity and severity of Plaintiff's symptoms. *See* 20 C.F.R. § 404.1545(a). In this case, the ALJ indicated that the treatment notes, which indicated improvement in Plaintiff's condition with medication and counseling, were inconsistent with Plaintiff's statements of disabling symptoms.

Plaintiff also asserts that the ALJ improperly evaluated his activities of daily living. While an ALJ must consider the claimant's daily activities, among other factors, in evaluating the intensity and persistence of pain, "this must be done with care." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). An ALJ cannot place "undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home." *Mendez v. Barnhart*, 439 F.3d 360, 362–63 (7th Cir. 2006). Though the ALJ could have explained how he considered the difficulty Plaintiff had in performing certain activities, the ALJ did not equate Plaintiff's ability to perform certain activities of daily living with an ability to work full time. Instead, he considered Plaintiff's reported activities as one factor in assessing the credibility of his statements concerning the intensity, persistence, and limiting effects of his symptoms. *See Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013) ("The ALJ concluded that, taken together, the amount of daily activities Pepper performed, the level of exertion necessary to engage in those types of activities, and the numerous notations in Pepper's medical records regarding her ability to engage in activities of

16

daily living undermined Pepper's credibility when describing her subjective complaints of pain and disability.").  In short, the ALJ did not improperly rely on Plaintiff's reported activities of daily living.

Finally, Plaintiff asserts that the ALJ did not adequately address the testimony of Jeffrey Bucholtz, a veteran's advocate.  Bucholtz opined that Plaintiff was not able to maintain gainful employment based on his mental health conditions.  The ALJ found Bucholtz' opinion unpersuasive, as Bucholtz conceded he has no medical or vocational qualifications to offer an opinion as to Plaintiff's work capacities or limitations.  Because Bucholtz was not a medical source, his testimony was not entitled to consideration under 20 C.F.R. § 404.1520c.  In addition, his testimony did not constitute an opinion from a government agency, as Plaintiff suggests.  *See* 20 C.F.R. § 404.1504.  In any event, a decision made by "any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled" is not binding on the Commissioner.  *Id.*  In this case, the ALJ considered the records from the Department of Veteran's Affairs in reaching his determination.  In short, the ALJ did not err in finding Bucholtz' opinion unpersuasive.

## C. RFC Assessment

Plaintiff argues that the ALJ's "multiple errors in evaluating the medical opinions and Plaintiff's statements resulted in an RFC not supported by substantial evidence."  Pl.'s Br. at 25.  The court has concluded that the ALJ did not err in his assessment of the medical opinions or Plaintiff's statements.  After reviewing the record, the ALJ ultimately concluded that Plaintiff had the RFC to perform medium work with certain limitations.  R. 20.  Although Plaintiff may have preferred that the ALJ reach a different conclusion, a reviewing court may not substitute its

judgment for that of the agency it is tasked to review. Substantial evidence supports the ALJ's RFC finding. The ALJ's decision is not patently wrong and does not necessitate remand.

## CONCLUSION

For these reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** at Green Bay, Wisconsin this 29th day of December, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge